Mary HUDSON, Plaintiff,

v.

**DELPHI ENERGY AND ENGINE MANAGEMENT SYSTEMS, INC., a Division of General Motors, Defendants.**

No. 95–CV–6269.

United States District Court, W.D. New York.

May 21, 1998.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

James C. Holahan, Rochester, NY, for Defendant.

## DECISION and ORDER

SIRAGUSA, District Judge.

This matter is on before the Court on a motion by defendant, DELPHI ENERGY and ENGINE MANAGEMENT SYSTEMS, INC., a Division of General Motors, for an Order of summary judgment [document # 21–1] pursuant to Federal Rules of Civil Procedure 56 and dismissal of the complaint. For the reasons to be stated, the defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Mary Hudson filed a complaint with the Equal Employment Opportunity Commission (EEOC) on April 21, 1995 alleging racial discrimination by the defendant. Complaint [document # 1], at ¶ 8. Her EEOC complaint is part of the record. Defendant's Exhibits in Support of Motion, Exhibit B. In her judicial complaint, filed within ninety days of the "right to sue" letter from the EEOC, plaintiff alleges she was paid lower wages, was not promoted and was given lower classifications than non–African–American clerical employees. She alleges this conduct began when she was first hired in 1975 (as a temporary employee) and 1976 (as a permanent employee) and that the discrimination was throughout her tenure. Complaint [document # 1], ¶¶ 11 & 15. She makes specific allegations regarding her transfer to the Lexington Avenue location of defendant's business in 1993, Complaint [document # 1], ¶ 19, and her transfer in September 1995, Supplemental Complaint [document # 4], ¶¶ 25–31.

The defendant seeks to either have plaintiff's claims dismissed entirely, or limited to the period of time encompassed by the applicable statute of limitations for each cause of action under Title VII (42 U.S.C. § 2000e et seq.), 42 U.S.C. § 1981 and New York Executive Law § 296.

## SUMMARY JUDGMENT STANDARD

The law on summary judgment is well settled. Summary Judgement may only be

granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell OffShore, Inc.*, 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986).

■ The court must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

## DISCUSSION

### Statute of Limitations

The plaintiff alleges, in her Memorandum of Law, at p. 4, that the "discriminatory practices go back to 1975, and continued [*sic.*] to this day." She argues that since there is a continuing violation, the statute of limitations does not apply. The defendant, the moving party for summary judgment, argues that the court should limit the case to the applicable limitations period for the various causes of action. Defendant's Memorandum of Law, at 4. According to the defendant's calculation, this period would commence on August 28, 1994 for the Title VII causes of action. *Id.* at 5. Defendant further argues that the claims under New York Executive Law § 296 and 42 U.S.C. § 1981 are limited to the period beginning June 12, 1992. Defendant asks that the Court grant summary judgment dismissing the time barred allegations of the plaintiff's claims for intentional race discrimination and retaliations that occurred prior to these starting points. *Id.* at 5.

■ Claims under 42 U.S.C. § 1981 and New York Executive Law § 296 are subject to New York's three year limitations period for personal injury actions. *Tadros v. Coleman*, 898 F.2d 10 (2d Cir.), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990); N.Y. CPLR 214. The statute of limitations begins to run at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of [his] action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Claims under Title VII are governed by, in this case, a 300 day statute of limitations. 42 U.S.C. § 2000e–5(e)(1).

■ Plaintiff asserts that her allegations of a discriminatory policy or mechanism are actionable under the continuing violations doctrine. That doctrine provides that when an employer engages in "a continuous practice and policy of discrimination, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20,

25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). "To establish a continuing violation, 'a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period."'" *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408 (S.D.N.Y.1989) (citations omitted). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994). However, a continuing violation "may not be based on the continuing effects of an earlier discrimination . . . ." *Blesedell,* 708 F.Supp. at 1414 (citations omitted).

The plaintiff argues in her Memorandum of Law, that as long as she can prove continuing violations, the continuing-violation exception applies, citing to *Annis v. County of Westchester,* 136 F.3d 239 (2d Cir.1998). In *Annis,* the Second Circuit quoted from *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997):

> The continuing violation and its continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations."

In *Lightfoot,* the plaintiff argued that between 1988 and his termination in 1992, "he was repeatedly 'demoted,' and his pay grade remained frozen." *Lightfoot,* 110 F.3d at 907. The court held, "[a] continuing violation is not established merely because an employee continues to feel the effects of a[n earlier] discriminatory act on the part of the employer. To hold otherwise would render meaningless the time limitations imposed on discrimination actions." *Lightfoot,* 110 F.3d at 907–908.

In the case at bar, the plaintiff alleges specific discriminatory acts beginning at her promotion in 1983 which occurred seven years after she was hired as a permanent clerk. Plaintiff's Memorandum of Law, at 1. She cites to a 1991 job elimination alleging that the plaintiff's job was eliminated because she was African–American, whereas non–African–American secretaries, "some of whom had less seniority than plaintiff," did not have their jobs eliminated. *Id.* Next, plaintiff refers to her transfer to the Purchasing Department which lasted until 1992, when her job was again abolished because of her low grade, and she was transferred to the Department of Engineering. *Id.* In 1993, her position on the Department of Engineering was abolished and she was transferred to a different location to work with a non–African–American secretary. *Id.* That secretary was promoted to pay grade level six, while the plaintiff remained in pay grade level four, and "had to do a good part her work." Plaintiff's Memorandum of Law, at 1.

Plaintiff alleges that in October of 1993, the non–African–American secretary was transferred and the plaintiff assumed all of that secretary's duties, but without any promotion in pay. It is only at this time that plaintiff brings proof to bear on her allegations of racially discriminatory reasons for her failure to be promoted. *Id.* She alleges that one employer did not want the plaintiff to work for him and started to find fault with all of her work. The plaintiff alleges that no non–African–American employee was subjected to this same scrutiny. Plaintiff's Memorandum, at 2. It is also at this point, in her Memorandum of Law, that the plaintiff alleges in a conclusory fashion that other African–American secretaries were paid less and worked at lower pay grades than non–African–American secretaries, some of whom had less seniority than the plaintiff. *Id.* The plaintiff further alleges that on May 18, 1995, she left because of a disability and her position was given to a non–African–American secretary who simultaneously received a promotion to grade six. Plaintiff's Memorandum of Law, at 2.

In light of the conclusory nature of the plaintiff's factual allegations, the court finds insufficient evidence of a continuing violation from 1975 to the present. Except for the employment decisions in 1993, plaintiff's

proof does not show that the prior decisions were a result of a continuing act or policy of racial discrimination. Assuming for the sake of argument that the defendant's failure to promote the plaintiff earlier than 1983, or at all after that time, caused her to lose her jobs in 1991 and 1992, the effects in 1991 and 1992 do not make a continuous pattern of discrimination predicated on the failure to promote prior to 1983 or between 1983 and 1991. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997). Thus, the claims relating to incidents occurring prior to the statute of limitations are time barred.

**Equal Pay Claims**

In a discrimination case, the court must evaluate the evidence to determine whether the plaintiff has made a prima facie showing of discrimination by a preponderance of the evidence. To do so, plaintiff must show: "1) she is a member of a protected class 2) who performed her job satisfactorily (or who was qualified for a new position) 3) who was discharged (or not offered the new position) 4) under circumstances giving rise to an inference of discrimination (or retaliation). *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997); *Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994)." *Stratton v. Department for Aging for the City of New York,* 132 F.3d 869, 879 (2nd Cir.1997).

If plaintiff proves a prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, clear, specific and non-discriminatory reason for the adverse employment action taken. If the defendant meets that burden of production, the plaintiff retains the ultimate burden of proof to show that the proffered reason is merely a pretext for racial discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although the defendant argues that the plaintiff's complaint is based merely on surmise and conjecture, the Court finds that she has alleged sufficient facts which, if true, would permit her to receive a verdict from the jury.

■ Viewing the evidence, as the Court must, in light most favorable to the non-

moving party, it would appear that Ms. Hudson, an African–American female, is and has been a satisfactory employee since her employment began in 1975. Beginning with her assignment in 1993 to the Lexington Avenue location where she was working with Jeanne Caufman, a non–African–American employee, through to the present, she has raised sufficient evidence to create a prima facie case of racial discrimination. Plaintiff's promotion to grade four had occurred 10 years prior to this assignment. She was working for a secretary who was a grade five and doing a good deal of that secretary's work. In October she was assigned that secretary's duties in addition to her own, but received no increase in pay. Following the plaintiff's leave of absence due to a disability, she was replaced by a non–African–American secretary in the same position as she, but who had been promoted from a grade two in 1981 to a grade four in 1983 and a grade five in 1984, and further promoted to a grade six, prior to taking the plaintiff's position in 1995. Plaintiff's affidavit, at 3. Thus, the non–African–American secretary was at a grade level of six when she assumed the duties of working for the same employer that the plaintiff worked for, but at a grade four.

The defendant conceded at oral argument that the plaintiff successfully made a prima facie case, but counters that the plaintiff's compensation was related to her work, not her race. Defendant's Memorandum of Law, at 10. Defendant contends that in 1994, the plaintiff received an approximately four percent merit increase following her review by Arthur Paliani. After the January 1994 review, the defendant alleges that plaintiff's performance declined substantially. Defendant's Memorandum of Law, at 11–12. The defendant's submission includes Exhibit L, a detailed set of notes pertaining to the plaintiff's performance from 11/02 (the year is not listed), until 05/26 (again, the year is not stated, but the top of the page has an entry for 05–19–95). The defendant does not submit the basis upon which the court may consider those notes as evidence, however. They do not appear to be business records, and if they are, there is no foundation laid out in the affidavit or memorandum for their

admission. The defendant has included, as well, what appear to be business records in the form of performance evaluations which, if true, satisfy the defendant's burden to come forward with a specific, non-racial reason for the employment actions. Nevertheless, the court finds that the plaintiff's proof on this motion is sufficient to show that the proffered reason is a pretext for racial discrimination. The court finds, therefore, a material issue of fact remains on the equal pay claims for the jury to determine following a trial.

**Disability Claims**

Plaintiff claims that she developed carpal tunnel syndrome in both wrists as a result of her employment. Plaintiff's Memorandum of Law, at 7. She claims that although the defendant accommodated her need for an ergonomically friendly work station and chair, she was not permitted "a break of a few minutes every now and then...." Plaintiff's Memorandum of Law, at 8. Defendant included in his exhibits a medical notice of restrictions stating that the plaintiff was restricted to "15 minute break from typing every hour." Defendant's Exhibits in Support of Motion, Exhibit O. Following her absence on disability, the plaintiff was restricted to "no typing $ 4 hours/day," which the court interprets as no typing for more that four hours per day. *Id.*, Exhibit R.

Assuming, without deciding, that this condition was a disability protected under federal and state law, the court nevertheless finds plaintiff's proof insufficient to sustain her claim of racial discrimination regarding the disability. The court is satisfied from the proof presented on this motion that the defendant made reasonable accommodations to address the plaintiff's disability. Contrary to plaintiff's assertion in her Memorandum of Law, at 8, plaintiff received both the ergonomically friendly workstation and the fifteen minutes breaks from typing. Mr. Paliani's complaints were not that the plaintiff needed a break from typing, but that she interpreted the medical restriction as a break from work. Clearly that is not what is written on the restriction and plaintiff does not counter this point at all.

Likewise the defendant's assignment of the plaintiff to a clerical position in the records department to accommodate her restrictions upon returning to work (no typing in excess of four hours per day) were reasonable and there is no proof to show this assignment was racially based. Thus, even if plaintiff is protected under the Americans with Disabilities Act, nothing in this record supports her contention that her disabilities were not accommodated and nothing supports her further contention that the defendant's employment actions in reaction to her medical restrictions were taken because of racial bias. The disability claims, thus, must be dismissed.

**CONCLUSION**

The defendant's motion for summary judgment [document # 21–1] is granted, but only to the extent that the equal pay claims arising prior to the applicable statute of limitations period are time barred and the plaintiff's disability claims are dismissed, and is otherwise denied.

IT IS SO ORDERED.