**Alexis M. HERMAN, Secretary of the United States Department of Labor, Plaintiff,**

v.

**TIME WARNER INC., Time Inc., Book-of-the-Month Club, Inc., Time Distribution Services, Inc., Carolyn K. McCandless, Paul D. Williams, Philip R. Lochner, Jr., Andra D. Sanders, John Labarca, George Artandi, Susan Baird, Pat Mulvey, Matt Rudman, Martin D. Payson, Burt Wasserman, Michael Hayes, Kevin Sene, Richard Engle, Time Warner Employees' Pension Plan, Warner Publishing Pension Plan, Time Warner Employees' Savings Plan, Time Warner Savings Plan, Time Warner Employees' Stock Ownership Plan, Time Warner Group Health Plan (including the MD Access Program, the Indemnity Program, the Dental Program A & B, and the Managed Mental Health and Substance**

Abuse Program), Retirement Income Plan for Employees of Book–of–the–Month Club, Time Distribution Services Retirement Plan, and Salary Reduction Thrift Plan for Employees of Time Distribution Services, Defendants.

No. 98 CIV. 7589(DC).

United States District Court, S.D. New York.

Sept. 3, 1999.

U.S. Department of Labor, Office of the Solicitor, Plan Benefits Security Division, by Henry L. Solano, Solicitor of Labor, Sally Paxton, Deputy Solicitor for National Operations, Marc I. Machiz, Associate Solicitor, Leslie Canfield Perlman, Counsel for General Litigation, Plan Benefits Security Division, Suzanne Windle, Robin Springberg Parry, Alexander Fernandez, Trial Attorneys, Washington, DC, for Plaintiff.

Akin, Gump, Strauss, Hauer & Feld, L.L.P., by Kim Koopersmith, P.C., Richard J. Rabin, New York City, by Lawrence D. Levien, Lynda R. Stadler, Washington, DC, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this case, the U.S. Department of Labor (the "government") alleges that defendants, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, misclassified workers as "temporary employees" and "independent contractors," thereby depriving them of benefits to which they otherwise would have been entitled. Defendants contend that although the government's suit is styled as one for breach of fiduciary duties, the case is really an impermissible action for benefits. Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is denied.

### BACKGROUND

#### A. *The Facts*

##### 1. *Overview*

The complaint alleges the following facts, which are assumed to be true for purposes of this motion:

Defendant Time Warner, Inc. ("Time Warner") owns defendant Time Inc. ("Time"), which in turn owns several divisions and subsidiaries, including defendant Book–of–the–Month Club, Inc. and defendant Time Distribution Services, Inc. Defendants publish a number of national magazines, including Time, Sports Illustrated, Fortune, Life, Money, and People. From at least 1984, defendants have sponsored various employee benefit plans, including retirement plans and health and welfare plans.

Since at least 1990, defendants divided workers into two groups: the Edit Group and the Publishing Group. The Edit

**414**

Group was comprised of journalists, photographers, graphic designers, and others who produced Time's various publications. The Publishing Group handled the financial matters associated with publishing, including the Edit Group's budgets. Since at least 1984 and continuing through the present, new workers were classified for payroll purposes as "regular," "project," "supplementary," or "temporary" employees. Temporary employees[1] were also called "Green Requisition employees" or "Green Reqs." Other individuals were classified as "independent contractors." Since at least 1990, a worker's classification determined whether she or he was eligible to participate in the employee benefit plans. Most of the plans exclude temporary employees and independent contractors from participating.

The government contends that, since at least 1990, Time and various of its divisions and subsidiaries have misclassified workers as temporary employees and independent contractors when they were in fact regular, project, or supplementary employees. These employees, the government contends, would have been eligible to participate in certain benefit plans if they had not been misclassified. For the same time period, Time and various of its divisions and subsidiaries allegedly manipulated breaks in service for numerous temporary employees to maintain their temporary status. By misclassifying temporary employees and independent contractors, according to the government, defendants prevented them from completing

the length of service required to be eligible to receive benefits.

### 2. *The Benefit Plans and Their Fiduciaries*

The various pension and other employee benefit plans sponsored by defendants have different eligibility requirements. (*See* Compl. ¶¶ 35–67). Generally, however, regular full-time and part-time employees were eligible to participate in a plan after meeting the service requirements. Temporary employees were eligible to participate only in certain plans, and it appears that independent contractors were not eligible for benefits under any of the plans.

During the relevant period, a single committee (the "Administrative Committee") administered all of these plans pursuant to ERISA § 3(16). The individual defendants are or were members of the Administrative Committee. The Administrative Committee was a fiduciary of the plans pursuant to ERISA § 3(21) because it had the sole authority to interpret the terms of the plans, including eligibility terms, and to decide any matters related to the administration of the plans. In addition, Time Warner was a fiduciary of defendant Managed Mental Health and Substance Abuse Program because it was responsible for identifying workers eligible to participate in that plan.

The Administrative Committee and Time Warner purportedly failed to: (1) properly apply the plans to all eligible

---

1. The term "temporary employee" was defined in various documents. The Publishing Group handbook defined temporary employees as "persons hired for seasonal or temporary work lasting less than six consecutive months." (Compl.¶ 11). The handbook further stated that managers "cannot create deliberate breaks in service every six months to maintain status." (*Id.*). Likewise, the Edit Group handbook defined temporary employees as persons "hired for seasonal or temporary work lasting less than four consecutive months" and similarly prohibited deliberate breaks in service. (*Id.* ¶ 12). Collective bargaining agreements ("CBAs") defined a tem-

porary employee as "an Employee engaged to perform temporary or seasonal work as a substitute or replacement for an Employee, but such term shall not include an Employee who is engaged 'on trial' to perform a permanent job." (*Id.* ¶¶ 13–14). A prior CBA imposed a four month limit on temporary status and disallowed intentional breaks in service to maintain that status. (*Id.* ¶ 13). A subsequent CBA contained a provision that was identical except that it provided for temporary employment status to be extended to "six months, with the consent of the Guild, which consent shall not be unreasonably withheld." (*Id.* ¶ 14).

persons; (2) identify all employees eligible to participate in the plans; and (3) ensure that all eligible participants were in fact included in the plans. By failing to examine whether workers classified as temporary employees and independent contractors were in fact employees, the Administrative Committee and Time Warner purportedly caused certain workers to be wrongfully excluded from the benefit plans. These allegedly misclassified workers never received documentation or other information about the benefit plans.

## B. *Procedural History*

The government commenced this action by filing a complaint on October 26, 1998. The complaint alleges three types of ERISA violations by the Administrative Committee and Time Warner: (1) failure to act solely in the interests of the plan participants and beneficiaries for the purpose of providing them benefits, in violation of ERISA § 404(a)(1)(A); (2) failure to act in accordance with the documents and instruments governing the plans, in violation of ERISA § 404(a)(1)(D); and (3) failure to provide documents and information to the misclassified temporary employees and independent contractors, in violation of ERISA §§ 101(a), 102(a)(1), 104(b)(1) and (3), and 105(c).

The government claims that each member of the Administrative Committee is personally liable for losses incurred by the plans as a result of her or his breach pursuant to ERISA § 409(a), and that such committee members may be removed from their positions as fiduciaries of the plans pursuant to ERISA § 502(a)(5). The government further contends that Time Warner may be required to disgorge all profits earned and all funds retained to make restitution to the appropriate plans also pursuant to ERISA § 502(a)(5).

Pursuant to ERISA § 502(a)(2) and (5), the government seeks an order of the Court appointing an independent fiduciary with the exclusive power and authority to: (1) identify misclassified employees; (2) determine for each misclassified employee any period of eligibility, any benefits she or he could have applied for, and benefits to which she or he was entitled to under the plans; (3) provide appropriate disclosure to misclassified employees; and (4) determine whether certain employees have been informed of their right to participate in certain plans. The government also seeks a court order: (1) requiring Time and Time Warner to pay all expenses in connection with the independent fiduciary, to comply with the independent fiduciary's decisions, including retroactive inclusion of eligible persons, and to pay benefits to eligible persons; (2) requiring Time Warner and the Administrative Committee to restore all losses caused by their fiduciary breaches; and (3) permanently enjoining defendants from misclassifying employees in the future.

This motion followed.

## *DISCUSSION*

### A. *Applicable Legal Standards*

#### 1. *Motions to Dismiss*

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), I must "accept the factual allegations" set forth in the amended complaints as true and "draw all reasonable inferences in favor of the plaintiff[s]." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir.1998) (quoting *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996)). A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In other words, the issue before the Court on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc.*

**416**

v. *Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (citation omitted), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

■ A Rule 12(b)(1) motion to dismiss contests a court's statutory or constitutional authority to adjudicate a claim. *See Jackson v. New York State Dep't of Correctional Servs.,* No. 94 Civ. 8731, 1995 WL 539644, at *2 (S.D.N.Y.1995) (quoting 2A James W. Moore *et al.,* Moore's Federal Practice ¶ 12.07, at 12–49 (2d ed.1994)). In deciding such a motion, "the court construes the complaint broadly and liberally," but does not draw inferences favorable to the party asserting jurisdiction. *Id.; accord Dewey v. PTT Telecom Neth., U.S., Inc.,* No. 94 Civ. 5983, 1995 WL 425005, at *1 (S.D.N.Y.1995), *aff'd,* 101 F.3d 1392 (2d Cir.1996) (unpub.mem.). The party asserting jurisdiction bears the burden of proof once jurisdiction is challenged. *Dewey,* 1995 WL 425005, at *1 (citing *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942)).

### 2. *Breach of Fiduciary Duties*

■ To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that the defendant was a fiduciary and that the defendant breached its fiduciary obligations. *See Varity Corp. v. Howe,* 516 U.S. 489, 498, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In considering the scope of a fiduciary's duties under ERISA, courts must apply the common law of trusts while "bearing in mind the special nature and purpose of employee benefit plans." *Id.* at 497, 116 S.Ct. 1065 (quoting H.R. Conf. Rep. No. 93–1280, at 302, *reprinted in* 1974 U.S.C.C.A.N. 5038). Courts must therefore depart from the common law if "the language of the statute, its structure, or its purposes" so require. *Id.*

■ Under ERISA § 404(a)(1)(A), "a fiduciary shall discharge his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries and

... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Benefit plan trustees therefore "have a fiduciary duty to 'act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries.'" *Diduck v. Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 916 (2d Cir.1989) (quoting *Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 571, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)); *see New York State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.,* 92 F.3d 127, 131 (2d Cir.1996). Accordingly, a trustee's common law duty to "investigate the identity of the beneficiary when the trust documents do not clearly" identify the beneficiary similarly applies to benefit plan trustees. *Central States,* 472 U.S. at 572, 105 S.Ct. 2833 (quoting George G. Bogert & George T. Bogert, Law of Trusts and Trustees § 583, at 348–49, n.40).

ERISA also contains mandatory reporting and disclosure provisions so that a "participant knows exactly where he [or she] stands with respect to the plan." S.Rep. No. 93–127, *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863; *see* ERISA §§ 101(a), 102(a)(1), 104(b)(1) & (3), 105(c); *Roeder v. General Signal Corp.,* 901 F.Supp. 124, 127 (W.D.N.Y.1995). In addition, benefit plan fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan." ERISA § 404(a)(1)(D); *see O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 61 (2d Cir.1994); *Dardaganis v. Grace Capital Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989); *Clarke v. Bank of N.Y.,* 687 F.Supp. 863, 867 (S.D.N.Y.1988).

### 3. *The Government's Enforcement Power*

The statute contemplates civil enforcement of its provisions and outlines a de-

tailed scheme, specifying the types of actions that can be brought by particular litigants. *See* ERISA § 502, 29 U.S.C. § 1132. In the instant case, the government relies on ERISA § 502(a)(2) and 502(a)(5).

■ Pursuant to ERISA § 502(a)(2): "A civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief" for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Under this section, the government may bring an action for breach of fiduciary duty on behalf of the plan itself and not on behalf of individual beneficiaries. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993); *Tabasko v. Direct Communications Group, Inc.*, No. 90 Civ. 7954, 1996 WL 94816, at *2 (S.D.N.Y. Mar.4, 1996).

■ ERISA § 502(a)(5) is a catchall provision pursuant to which the government may seek an order enjoining "any act or practice which violates any provision of this subchapter, or . . . obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter." 29 U.S.C. § 1132(a)(5); *see Marshall v. Chase Manhattan Bank*, 558 F.2d 680, 682 (2d Cir.1977); *Reich v. Polera Bldg. Corp.*, No. 95 Civ. 3205, 1996 WL 67172, *5 (S.D.N.Y. Feb. 15, 1996). The government may rely on the catchall provision if the equitable relief required for complete relief is unavailable under the other provisions in the statute. *See Varity v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[C]atchall provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.").

■ The statute permits only participants and beneficiaries "to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). That participants or beneficiaries may have claims for benefits, however, does not preclude the government from bringing a separate action. *See Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991) (noting that ERISA authorizes the government "to bring suit concurrently with private plaintiffs to recover appropriate damages"), *cert. denied sub nom. Levy v. Martin*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).

## B. *Application*

■ Defendants' motion is denied. First, as a technical matter, the government has sufficiently alleged that the Administrative Committee and Time Warner breached their fiduciary duties under ERISA. The government alleges, and defendants do not dispute, that the Administrative Committee and Time Warner are fiduciaries. The government further alleges that defendants breached their fiduciary obligations primarily by failing to identify workers, who were indeed eligible to participate in the plans but who were misclassified by the hiring managers as temporary employees and independent contractors. The government contends that as a consequence defendants failed to comply with ERISA's mandatory disclosure requirements (as defendants could not provide information to unidentified employees) and with plan documents (as the misclassified employees were excluded from participation). The government has alleged the elements of a breach of fiduciary duty claim, and it has the authority under § 502(a)(2) to bring such a claim.

Second, from a broader perspective, if the allegations of the complaint are true, governmental action is appropriate here. Misclassified employees, for example, may not even know that their rights under ERISA might have been violated, a great many employees may have been affected, and the public also may have a strong

interest in the issues presented. Under these circumstances, it makes sense for the government to bring suit.

 Defendants' contention ·that the government's breach of fiduciary duty claim is in reality an impermissible claim for benefits [2] is rejected. That misclassified employees might have been deprived of benefits does not mean that the plans themselves could not have been injured as well.[3] The government has alleged injury to the plans. It contends, for example, that employees who should have been included in the plans were not and that as a consequence the plans suffered losses. The government seeks relief on behalf of the plans, including, for example, removal of fiduciaries pursuant to ERISA § 409 and recoupment of damages allegedly suffered by the plans. As the Supreme Court has held:

> [O]ne can read § 409 as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach. After all, ERISA makes clear that a fiduciary has obligations other than, and in addition to, managing plan assets. For example, ... a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents.

*Varity v. Howe*, 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citations omitted).

Finally, defendants argue that permitting the government's action to proceed would "eviscerate" ERISA's administrative scheme because the misclassified individuals could obtain benefits without exhausting their administrative remedies. Defendants are essentially arguing that employees who defendants contend are not covered by an administrative process must exhaust that process anyway. The argument makes no sense. The government need not wait to assert its breach of fiduciary·duty claims until misclassified workers exhaust an administrative process that defendants contend is inapplicable. *See In re Blue Cross of W. Pa. Litig.*, 942 F.Supp. 1061, 1064 (W.D.Pa.1996).

I have considered the remainder of defendants' arguments and they are rejected.

### CONCLUSION

Defendants' motion to dismiss is ·denied. The parties shall appear for a pretrial conference on September 17, 1999 at 10:30 a.m. in Courtroom 11A at 500 Pearl Street.

SO ORDERED.

2. Quoting the Secretary of Labor's public statements that, "employers must deliver promised benefits to all eligible. employees and we believe some misclassified Time Inc. employees did not receive benefits they were entitled to," defendants contend that the government has thus revealed its impermissible goal to recover benefits. (*See* Defs. Mem. at 1). As defendants note, ERISA § 502(a)(1)(B) permits a participant or beneficiary, but not the government, to bring a suit to recover benefits.

3. The cases defendants cite are inapposite. The plaintiffs in *Revello v. Metropolitan*, No. 84 Civ. 2911, 1984 WL 912 (S.D.N.Y. Sept.28, 1984), for example, were individuals challeng-

ing the termination of their benefits who had failed to exhaust plan remedies. In ruling that plaintiffs could not assert a claim for breach of fiduciary duty, the court noted that the case did not involve "fiduciary malfeasance with an attendant loss of plan assets, but rather, individuals' entitlement to benefits under the plan." *Id.* at *2. In contrast, the government in the instant case does not seek to restore specific benefits to particular workers. *See also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Tabasko v. Direct Communications Group, Inc.*, No. 90 Civ. 7954, 1996 WL 94816 (S.D.N.Y. Mar.4, 1996).