Alton C. SCHULTZ, Jr., Elaine B. Jackson, Gladys Criddle, and Harold J. Weber, Jr., individually and on behalf of a class of others similarly situated, Plaintiffs,

v.

TEXACO INC., Texaco Exploration and Production, Inc., the Retirement Plan of Texaco, Inc., the Employee Thrift Plan of Texaco, Inc., Texaco Comprehensive Medical Plan, Texaco Dental Assistance Plan, Short–Term Disability Plan of Texaco, Inc., Long–Term Disability Plan of Texaco, Inc., Term Life Insurance Plan of Texaco Inc., Group Accident Plan of Texaco Inc., Janet L. Stoner, Peter I. Bijur, A. Charles Baillie, Mary K. Bush, Edmund M. Carpenter, Michael C. Hawley, Franklyn G. Jenifer, Sam Nunn, Charles H. Price, II., Charles R. Shoemate, Robin B. Smith, William C. Steere, Jr., and Thomas A. Vanderslice, Defendants.

No. 00 CIV. 0439(BDP).

United States District Court,
S.D. New York.

Jan. 3, 2001.

Elise M. Bloom, Jackson Lewis Schnitzler & Krupman, New York, NY, for the defendants.

## AMENDED DECISION AND ORDER

BARRINGTON D. PARKER, District Judge.

In this ERISA action, Plaintiffs are former employees of Texaco, Inc. ("Texaco") and Texaco Exploration and Production, Inc. ("TEPI"), who were hired directly by Texaco or TEPI and then reclassified as independent contractors in the early 1990's. The plaintiffs bring this putative class action under various provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001, et seq. ("ERISA"). They allege that defendants Texaco, members of its Board of Directors, TEPI, and Janet L. Stoner, the benefit plans administrator, (collectively, "the defendants") violated ERISA by unlawfully failing to include them in various Texaco ERISA plans after they were improperly reclassified as independent contractors or temporary employees.[1]

## BACKGROUND

The four plaintiffs are Alton C. Schultz, Jr., Elaine B. Jackson, Gladys Criddle, and Harold J. Weber, Jr. Alton Schultz was hired by TEPI in May 1991 as an "Independent Petroleum Landman". Two months later in July 1991 he began receiving his paychecks from a temporary agency called Metro Careers, Inc. and subsequently received paychecks from other temporary agencies. He worked at various Texaco facilities until January 28, 1999. Schultz alleges he learned of a benefits suit by ARCO Corporation employees in June of 1999 and soon thereafter filed a request with Texaco for benefits. Texaco denied his request.

Stephen Albright, New York, Russ M. Herman, Steven J. Lane, Berman, Herman, Katz and Cotlar, New Orleans, LA, for the plaintiffs.

---

1. Subsequent to the filing of the amended complaint and the defendants' motion to dismiss, by Stipulation dated June 7, 2000 the ERISA plans were dismissed from the Section 510 claim, the 502(c) claim and 502(a)(3) claim. Texaco, TEPI, the directors, and the Chairman of Texaco Board were also dismissed from the Section 502(c) claim. The state law claims were dismissed against all defendants.

Elaine Jackson was hired by TEPI in October 1990 as an "Oil and Gas Lease Analyst". In July 1991, she was informed that Metro Careers would handle her payroll. She continued to work at Texaco until March of 1995 when she was released. She was rehired as an "Oil and Gas Lease Analyst" in July 1996, received her paychecks through Kelly Temporary Services, and ceased working for Texaco in February 1999. She alleges that she too learned of the suit by ARCO employees in June 1999 and then filed a request for benefits from Texaco which was denied.

Gladys Criddle was hired by TEPI in late 1990 as a well spotter. At some point subsequent to her hiring, she began receiving checks from a temporary employment agency called Norrell. She continued to work at Texaco until January 1999. She does not allege that she requested information about Texaco benefit plans.

Harold Weber first worked for Texaco between 1966 and 1984, when he resigned to pursue other employment. In March 1991, Texaco rehired Weber as an "independent landman" on a *per diem* basis. In July 1991, Metro Careers began paying Mr. Weber. He worked at Texaco until February 1999. Mr. Weber then requested various benefits from Texaco and was ultimately denied them in January 2000.

The plaintiffs allege that they were transferred from Texaco and TEPI to various temporary agencies and, although they received checks from these agencies, no other substantive changes occurred in their employment status. They allege that they were provided office space, tools, and Texaco equipment. They were paid by the hour, had their time sheets approved by Texaco and reported to Texaco when sick or on vacation. They allege that they received training and professional education from Texaco, performed work directly for Texaco and were supervised in their daily activities by Texaco employees. The plaintiffs maintain that, even if they were no longer directly on Texaco or TEPI's payroll, they were nonetheless "common law" employees, despite Texaco's decision to treat them as independent contractors or leased employees.

The action was commenced in January 2000. On March 24, 2000, the plaintiffs filed a Second Amended Complaint although, as previously noted, in June 2000 certain defendants and claims were voluntarily dismissed. The current complaint alleges that: (a) the defendants breached their fiduciary duties under Section 502(a)(3) by mis-classifying the plaintiffs as independent contractors; (b) the defendants improperly denied ERISA benefits under Section 502(a)(1)(B); (c) the defendants refused to supply benefit information in violation of Section 502(c); (d) their reclassification was a deliberate attempt to interfere with plaintiffs' rights to benefits in violation of ERISA section 510; and (e) the defendants violated state law. The Plaintiffs also seek injunctive relief under Section 409 and Section 502(a)(3) reclassifying them as employees with full ERISA benefits, and preventing Texaco and TEPI from making similar allegedly improper reclassifications.

In April 2000, Texaco moved to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), on the grounds that various claims are time-barred or are otherwise legally insufficient. Specifically, the defendants seek to dismiss the claims based on ERISA Sections 510, 502(a)(1)(B), 502(a)(3), and 502(c). For the reasons stated below, the motion is granted in part and denied in part.

## DISCUSSION

### I.

The plaintiffs first claim violations of Section 510 of ERISA, 29 U.S.C. Sec. 1140. In relevant part, Section 510 makes it unlawful for an employer to:

discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any

right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...

29 U.S.C. Sec. 1140.

Plaintiffs argue that the defendants violated Section 510 when they removed plaintiffs from Texaco or TEPI's payrolls and reclassified them as independent workers or leased employees since the purpose of this shift was to interfere with their attainment of ERISA rights.

■ Defendants contend that the claim is time-barred. Section 510 does not expressly contain a statute of limitations. However, our Circuit has held that the statute of limitations for Section 510 claims is the analogous two-year state statute of limitations for causes of action in violation of New York Worker's Compensation Law Section, 120. *Sandberg v. KPMG Peat Marwick, LLP,* 111 F.3d 331, 336 (2d Cir. 1997).

It is undisputed that the last time the plaintiffs received checks directly from Texaco or TEPI was in 1990 or 1991 when they were classified or reclassified as employees of various temporary agencies. However, the plaintiffs did not assert their Section 510 claim until January of 2000, almost seven years later.

The plaintiffs argue that the Court should equitably toll the limitations period because the conduct of the defendants in continuing to mistakenly classify them amounts to a continuing violation of the statute, or, in the alternative, the Court should equitably toll the limitations period for the Section 510 and 502(a)(1)(B) claims because the defendants' concealment of plaintiffs' eligibility for ERISA benefits prevented them from discovering their injury.

■ Neither of these arguments is persuasive. First, no continuing violation occurred. The plaintiffs, according to the Second Amended Complaint, were misclas-

sified in discrete, singular actions in 1990 or 1991. Furthermore, plaintiffs do not allege or identify any ongoing, discriminatory policy, or series of discriminatory acts, as required for the continuing violation doctrine to apply. Accordingly, the Title VII cases cited by plaintiffs in which a discriminatory policy or a series of discriminatory acts were alleged are inapposite.

■ Specifically, plaintiffs allege a single "erroneous classification" in late 1990/early 1991 which "continued to interfere with [their] attainment of employment benefits ..." (2d Amd.Complaint, ¶ 118). However, the mere fact that the effects of a single, wrongful act continue to be felt over a period of time does not render that single, wrongful act a "continuing violation." *See, e.g., Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1138–41 (7th Cir.1992). *See also Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907–908 (2d Cir.1997); *Hudson v. Delphi Energy and Engine Management Systems, Inc.,* 10 F.Supp.2d 256, 259 (W.D.N.Y.1998). Indeed, if accepted by the Court, plaintiffs' interpretation of the continuing violation doctrine would lead to the illogical result that no claim under Section 510 could ever be time-barred, since every termination and every "mis-classification" has the "continuing" effect of rendering an individual ineligible to receive employment benefits.

## II.

Next, the plaintiffs allege that the defendants violated Section 502(a)(1)(B), 29 U.S.C. Sec. 1132(a)(1)(B).

That section reads, in part, as follows:

(a) Persons empowered to bring a civil action

A civil action may be brought-

(1) by a participant or beneficiary-

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. Sec. 1132(a).

Specifically, the plaintiffs allege that because they were improperly reclassified as independent contractors, they were wrongfully denied employee benefits in violation of Section 502(a)(1)(B). Defendants contend that, as with Section 510, the claim is time-barred.

■ Again, although ERISA does not prescribe a statute of limitations for violations of Section 502(a)(1)(B), our Circuit holds that the appropriate statute of limitations under analogous New York law is the six year statute of limitations that applies to claims for breach of contract. *Miles v. New York State Teamsters Conference Pension and Retirement Fund*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

A claim for denied benefits under Section 502(a)(1)(B) begins "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 47–50 (2d Cir.1999). Defendants argue that each plaintiff knew, or should have known, in 1990 or 1991 that their benefit plans were being repudiated when they began to receive payroll checks from an employment or temporary agency and not from Texaco or TEPI.

Plaintiffs allege that when they were removed from the payrolls of Texaco or TEPI they did not understand that their benefits would, as a result, be denied. Since no other significant changes occurred in the nature of their work or in their responsibilities, they insist that they neither knew, nor should not have known of the repudiation.

■ Contrary to this contention, plaintiffs' claim for benefits under Section 502(a)(1)(B) accrued in late 1990 or early 1991, when plaintiffs allege they were wrongfully removed from either Texaco or TEPI's payroll, placed on the payroll of various temporary employment agencies, and erroneously classified as independent contractors for "the sole or predominant purpose" of preventing plaintiffs from participating in Texaco and/or TEPI's ERISA covered benefits plans. It was at this time that plaintiffs knew they would not be eligible to participate in, or receive benefits from, the Plans and suffered the injury which forms the basis of their denial of benefits claim, and it is at this time that the repudiation, which is the basis for this lawsuit, was known, or, or at a minimum, should have been known, to plaintiffs. *Carey*, 201 F.3d at 47–50.

■ Plaintiffs contend the statute of limitations as to their Sections 510 and 502(a)(1)(B) claims should be tolled either under Louisiana's doctrine of "*contra non valentem*" or under principles of equitable estoppel. Where a District court has borrowed a forum state's limitations periods, such as with plaintiffs' Sections 510 and 502(a)(1)(B) claims, the Court also looks to the forum state's laws to determine the circumstances under which the borrowed limitations periods should be tolled, or whether estoppel principles apply. *See, e.g., Board of Regents University of State of New York v. Tomanio*, 446 U.S. 478–486, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989).

Thus, Louisiana law does not apply and New York tolling principles codified at C.P.L.R. §§ 204, 205, 207, and 208 control. Specifically, New York permits the tolling of a statute of limitations: (1) "[w]here the commencement of an action has been stayed by a court or by statutory prohibition" (C.P.L.R. 204(a)); (2) where a dispute that is ultimately determined to be non-arbitrable has been submitted to arbitration (C.P.L.R. 204(b)); (3) where an action was timely commenced and dismissed (other than for certain reasons),

and recommenced within six months of the dismissal (C.P.L.R. 205(a)); (4) where a defendant is outside New York when a claim accrues (C.P.L.R. 207); and (5) when a plaintiff is disabled by infancy or insanity when his claim accrues (C.P.L.R. 208). *See also, Foley,* 1998 U.S. Dist. LEXIS 12176, *30–33 (W.D.N.Y. Jan. 27, 1998). None of these tolling principles apply in this case.

■ Under New York law, a defendant is estopped to assert a statute of limitations defense: (1) where the defendant conceals from the plaintiff the fact that he has a cause of action, or (2) where the plaintiff is aware of his cause of action, but the defendant affirmatively induces him to forego suit until after the period of limitations has expired. *See* McKinney's C.P.L.R. § 201, comment C201:6; *Foley,* 1998 U.S. Dist. LEXIS 12176, *30; *Perez,* 872 F.Supp. at 52 (S.D.N.Y.1994). Again, neither of these circumstances is alleged to exist in this case.

■ The basis for plaintiffs' 510 claim (the alleged "erroneous classification" of plaintiffs) took place around 1991. Plaintiffs were aware of this classification when it occurred. Likewise, plaintiffs' 502(a)(1)(B) claim is premised on a denial of an opportunity for participation in the Plans. This denial occurred, with plaintiffs' knowledge, about the same time. Since plaintiffs do not allege that defendants concealed any relevant facts from them, there can be no equitable estoppel based on a concealment theory.

Second, plaintiffs' argument that defendants' failure to provide them with Plan documents was an affirmative act intended to induce plaintiffs to forgo their lawsuit is contrary to the allegations in the Second Amended Complaint. Plaintiffs allege that defendants' failure to provide them with Plan documents was a consequence of the "erroneous classification" of plaintiffs (of which plaintiffs were fully aware), and not an affirmative act intended to induce plaintiffs to forgo filing suit. (2d Amd.Complaint, ¶¶ 36, 56, 74); *Foley,* 1998 U.S. Dist. Lexis 12176 at *30. Thus, there also can be no equitable estoppel based on a fraudulent inducement theory. Accordingly, plaintiffs' claims for benefits under Sections 510 and 502(a)(1)(B) are dismissed as time-barred.

### III.

■ Next, the plaintiffs claim violations of Section 502(c), 29 U.S.C. Sec. 1132(c), against the Plan Administrator, Janet Stoner, Texaco, TEPI and the Texaco Board of Directors. Section 502(c) of ERISA provides:

(1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . .

Under the express terms of this section, only a plan administrator can be found liable for a failure to provide the required information. *See* 29 U.S.C. Sec. 1132(c). Accordingly, all defendants except Stoner are dismissed.

The defendants move to dismiss plaintiffs Criddle and Weber on the ground that neither alleges that he or she asked Texaco or TEPI for benefit information. Under the express statutory language, in order for a claim to be actionable under this section of ERISA, and the administrator must have failed or refused to comply with such request.

■ The Second Amended Complaint (at ¶ 90) appears to allege that Weber requested information. The motion to dismiss Weber's 502(c) claim cannot be resolved on a motion pursuant to Rule

12(b)(6). Since the complaint does not allege that Criddle did so, the motion to dismiss her from this claim is granted.

### IV.

Next, the plaintiffs seek equitable relief under Section 502(a)(3), 29 U.S.C. Sec. 1132(a)(3), against Texaco, its directors, TEPI and Janet Stoner, enjoining them from allegedly mis-classifying employees and making them ineligible for ERISA benefits.

Section 502(a)(3) authorizes a civil action in two circumstances:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. Sec. 1132(a)(3).

For claims under § 502(a)(3), the relevant limitations period is Section 413, which provides that:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of-
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

An ERISA claim for violations of fiduciary duties is time barred if filed after the earlier of six years after the last act which constituted a part of the breach of fiduciary duty, or three years after the earliest date on which the plaintiff had actual knowledge of the breach. The defendants argue that the three year statute of limitations in Section 413 has run for claims under Section 502(a)(3) and that the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) counsels against allowing recovery under Section 502(a)(3) where viable Section 502(a)(1)(B) claims exist.

Plaintiffs argue that under § 413(1), the limitations period has not expired because their Section 502(a)(3) claim is predicated upon the failure of the defendants to include the plaintiffs in ERISA plans and to provide them with the required disclosures. Accordingly, these alleged failures amount to an omission triggering the six year statute of limitations. Moreover, the plaintiffs argue that the three year period in 410(2) has not yet run because plaintiffs did not have "actual knowledge" of the denial of benefits until they read newspaper articles in 1999.

■ Actual knowledge means "actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Maher v. Strachan Shipping Co.*, 68 F.3d 951 (5th Cir.1995) (internal citations omitted). Other Circuits agree. *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir.1992). Whether defendants, in fact, had actual knowledge triggering the three-year statute under 413(2) cannot be resolved on a motion pursuant to 12(b)(6). Defendants motion to dismiss the Section 502(a)(3) claims as time-barred is denied.

### V.

The defendants also argue that the Section 502(a)(3) claim must be dismissed because the plaintiffs are attempting a dual-recovery of benefits, something barred by *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). *Varity,* held that where plaintiffs have an ade-

quate remedy under Section 502(a)(1)(B), they cannot repackage their denial of benefits claim as one for breach of fiduciary duties or injunctive relief under Section 502(a)(3). However, *Varity* also made clear that Section 502(a)(3) could, in limited circumstances, serve as a "safety net", affording equitable relief caused by violations that cannot be remedied through other provisions of Section 502. In particular, the Court found that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Varity*, 116 S.Ct. at 1079.

Relying on this language from *Varity*, defendants argue that because the plaintiffs seek the same remedy under 502(a)(1)(B) that they seek under the equitable provisions of Section 502(a)(3), the claim is prohibited by *Varity*. Defendants contend that, although this Circuit has not specifically addressed this dual-pleading issue, sister Circuits have found that a denial of benefits claim cannot also be pled as a violation of Section 502(a)(3). *See, e.g., Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615–16 (6th Cir.1998); *Wald v. Southwestern Bell Corp.,* 83 F.3d 1002, 1006 (8th Cir.1996).

It is true that *Varity* holds that a litigant may not double-dip by seeking to recover on a Section 502(a)(1)(B) claim while at the same time pursuing the equitable remedies of Section 502(a)(3). However, that is not the plaintiffs' theory. The Amended Complaint alleges a denial of benefits and, as a separate and distinct argument, asks the Court to use its injunctive powers to find that plaintiffs were employees as defined under ERISA and to require that the employer reclassify them as such.

 Since this case is at an early stage and facts are not sufficiently developed conclusively to demonstrate which of these claims is ultimately viable, dismissal of the Section 502(a)(3) claim at this time is not warranted.

The defendants are, however, correct that 502(a)(3) claims cannot proceed against individuals who are not fiduciaries. To establish a breach of fiduciary duty under this section, the plaintiffs must prove that the defendant is a fiduciary who breached fiduciary obligations. *See Herman v. Time Warner Inc.,* 56 F.Supp.2d 411, 416 (S.D.N.Y.1999). ERISA defines a "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (2) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (3) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) emphasis added.

 Thus, a person is a fiduciary only with respect to those portions of a plan over which he exercises discretion or control. *See, e.g., American Fed. of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y,* 841 F.2d 658 (5th Cir.1988). Thus, a claim for a breach of fiduciary duties is only viable if the person accused of such a breach is a fiduciary with respect to the particular activity being challenged. *See Moench v. Robertson,* 62 F.3d 553 (3d Cir.1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996).

Here, plaintiffs allege that Texaco, its Board of Directors and Janet Stoner, as Plan Administrator, breached their fiduciary duties, in violation of §§ 404(a)(1)(A) and 404(a)(1)(d) of ERISA, by failing to identify all employees eligible to participate in the Plans and to ensure that they participated in the Plans. In other words, plaintiffs allege that these defendants

breached their fiduciary duties with respect to the operation and administration of the Plans.

This argument fails because neither Texaco nor any member of its Board of Directors is a fiduciary with respect to these activities. Janet Stoner has been designated Plan Administrator. As Plan Administrator, she has the sole and exclusive responsibility for the administration of the Plans, including exclusive discretionary authority to interpret and construe the terms of the Plans, to determine the eligibility of participants and beneficiaries for benefits, and to determine all questions arising in connection with the administration of the Plans.

Notwithstanding the unequivocal language in the Plans, plaintiffs allege that Texaco, TEPI and Texaco's Board of Directors "retain fiduciary responsibility to the Plans," even after they have allocated those responsibilities to Janet Stoner. (*See* Second Amended Complaint at ¶¶ 110, 117). This allegation directly contradicts ERISA's statutory scheme, which expressly permits the allocation of fiduciary obligations among named fiduciaries, and which expressly limits fiduciary liability in such instances. 29 U.S.C. § 1105(c).

█ Where, as here, a plan provides for the allocation of fiduciary responsibility, the person allocating the fiduciary responsibilities (allegedly Texaco or the members of its Board of Directors) is not liable for acts or omissions of the person to whom fiduciary responsibility is allocated (Janet Stoner, in her capacity as Plan Administrator), except to the extent that the allocation itself is a breach of fiduciary duty. 29 U.S.C. § 1105(c)(2); *see also,* 29 C.F.R. § 2509.75–8, Q & A D–3. *See Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir.1985); *St. Francis Hosp. and Med. Ctr. v. Blue Cross & Blue Shield of Connecticut, Inc.,* 776 F.Supp. 659 (D.Conn.1991) ("an employer's ability to select the plan administrator does not, by itself, compel upon it the role of fiduciary"). Accordingly, Texaco and the individ-

ual members of its Board of Directors are not fiduciaries with respect to the administration of the Plans and plaintiffs' claim under Section 502(a)(3) against are dismissed as to all defendants except Janet Stoner in her capacity as Plan Administrator.

### CONCLUSION

The defendants' motion to dismiss all claims pursuant to ERISA Sections 510 and 502(a)(1)(B) is granted. The defendants' motion to dismiss the claim of Criddle and the claims against all defendants except Janet Stoner under ERISA Section 502(c) is granted. The motion to dismiss the Section 502(c) claim as to Harold Weber is denied. The motion to dismiss claims under Section 502(a)(3) is granted to all defendants except Janet Stoner. Defendants' motion to dismiss claims pursuant to ERISA Section 502(a)(1)(B) is granted. The parties shall appear for a Rule 16 conference on January 19, 2001 at 9:00 a.m.

**SO ORDERED.**