Norman FINDLAY, Plaintiff,

v.

REYNOLDS METALS COMPANY, INC.; and Aluminum, Brick and Glass Workers International Union Local No. 450, Defendants.

No. 96CV1872(TJM/GLS).

United States District Court, N.D. New York.

Feb. 9, 2000.

Seidenberg & Strunk, Syracuse, NY, for Plaintiff; Bonnie Strunk, of counsel.

Mackenzie Smith Lewis Michell & Hughes, LLP, Syracuse, NY, for Defendant Reynolds Metals Company, Inc.; Peter D. Carmen, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Norman Findlay brings the instant action against Defendants Reynolds Metals Company, Inc. ("Reynolds") and Aluminum, Brick and Glass Workers International Union Local 450 ("Local 450"), alleging that Defendants unlawfully discriminated against him on the basis of his race and color; denied him equal employment opportunities; and retaliated against him for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Plaintiff also asserts separate causes of action against Defendant Reynolds for a violation of his statutory rights under 42 U.S.C. § 1981 ("Section 1981") and against Defendant Local 450 for a breach of its duty of fair representation under the parties' collective bargaining agreement, pursuant to 29 U.S.C. § 185. Plaintiff seeks declaratory and injunctive relief, monetary damages, removal of any adverse reports from his personnel file, and attorney's fees. Presently before the Court is Defendant Reynolds' motion for summary judgment pursuant to FED. R. CIV. P. 56.

## I. Background

Because this is a motion for summary judgment by the defendant, the following facts are presented in the light most favorable to the plaintiff. *See Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 316 (2d Cir.1999); *Ertman v. United States,* 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff, an African American male, was hired by Reynolds on or about April 24, 1989 as a laborer at Reynolds' St. Lawrence Reduction Plant. On August 22, 1995, Plaintiff filed a charge with the EEOC alleging discrimination based upon his race and color and retaliation ("1995 EEOC Complaint").[1] In that charge, Plaintiff alleged, in relevant part, that:

I have been a laborer employed by Reynolds Metal[s] Company for approximately six years. Upon information and belief, I am the only African–American employee at the plant. Since the beginning of my employment I have been subjected to racial harassment consisting of a racially hostile work environment. I have been continuously subjected to derogatory racial epithets and racial humor and stereotyping by coworkers and management. Examples include a Ku Klux Klan poster affixed to my locker, parking cones resembling Ku Klux Klan hats taped to my car, jokes about slavery and excrement being directed to myself, and the use of the word "nigger" in the workplace, among other incidents. I have complained to management and they have failed to take remedial action or conduct an investigation. As a result of my com-

---

1. As discussed *supra,* the parties dispute whether Plaintiff complied with the administrative exhaustion requirements under Title VII with respect to Plaintiff's disparate treatment claim based on a denial of equal employment opportunities.

plaints, I have been ostracized and am isolated at work.[2]

Affidavit of Peter D. Carmen, Esq. in Support of Mot. for Summ. J. ("Carmen Aff."), at Ex. C (Charge of Discrimination dated August 22, 1995); *see also* Affidavit of Norman Findlay ("Findlay Aff."), at ¶ 3. On February 16, 1996, Plaintiff filed a second amended charge with the EEOC that was similar in all respects to the 1995 EEOC Complaint, except that it added a "continuing violation" claim. *See* Carmen Aff. at Ex. D (Charge of Discrimination dated February 15, 1996) ("1996 EEOC Complaint"). On August 28, 1996, the EEOC issued plaintiff a Dismissal and Notice of Rights letter.[3]

On November 26, 1996, Plaintiff, proceeding *pro se,* timely commenced the present action against Defendant Reynolds under Title VII and 42 U.S.C. § 1981. On July 31, 1997, by stipulation of the parties and after Plaintiff retained his present counsel, Plaintiff was granted leave to file an Amended Complaint. *See* Docket No. 16. On August 11, 1997, Plaintiff filed his Amended Complaint against Defendants Reynolds and Local 450 alleging, *inter alia,* three separate and distinct causes of action pursuant to Title VII:(1) a racially hostile work environment; (2) disparate treatment based on unfair policies and practices that denied Plaintiff the same employment opportunities provided to similarly situated white employees by limiting Plaintiff's job classifications, job assignments, wages and other work-related benefits; and (3) retaliation based on racial harassment that occurred after Plaintiff filed a complaint with the EEOC charging a racially hostile work environment.[4] *See* Amended Compl. at ¶¶ 15–34. Although Plaintiff argues that the continuing violation exception is applicable to his claims under Title VII and Section 1981, his 1995 and 1996 EEOC Complaints and Federal Complaint fail to document the dates of the specific incidents of discrimination underlying these claims.[5] In the interests of fairness to the Plaintiff, the Court, on its own initiative, carefully reviewed the affidavits and depositions submitted by the parties in connection with the instant motion and summarized the incidents underlying Plaintiff's claims. For purposes of the statute of limitations applicable to Plaintiff's Title VII and Section 1981 claims, the Court has classified these incidents into two categories; those occurring pre–1994 and those occurring in 1994 and thereafter.

The pre–1994 allegations include: (1) posting of a Ku Klux Klan poster on Plaintiff's locker (October 13, 1993), *see* Deposition of Norman Findlay ("Findlay Dep."), at 16–21; Affidavit of Norman Findlay ("Findlay Aff."), at Ex. B; (2) racial epithets by a co-worker regarding use of a machine (Summer 1993), *see* Findlay Dep. at 58–61; Aff. at Ex. B; (3) numerous racially derogatory comments, jokes and epithets by co-workers in department break room, (1990–91), *see* Findlay Dep. at 131–32; (4) placement of a racially derogatory poster outside pot room (1991), *see* Findlay Dep. at 128–31; (5) racial jokes by co-workers (1992–93), *see* Findlay Dep. at 51–57; (6) racially discriminatory discipline by a supervisor for throwing a bar/

---

2. Although Plaintiff's 1995 and 1996 EEOC Complaints allege a violation under N.Y. EXEC. LAW § 296 *et seq.,* those claims are absent from Plaintiff's Federal Complaint.

3. Specifically, the EEOC stated that:

Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of [Title VII].
Carmen Aff. at Ex. A.

4. As noted earlier, Plaintiff's Section 1981 claim against Defendant Reynolds is based on the same allegations. Plaintiff did not, however, assert a Section 1981 claim against Defendant Local 450.

5. Courts within this Circuit have analyzed the continuing violation exception in the context of Section 1981 claims. *See Jenkins v. Arcade Bldg. Maintenance,* 44 F.Supp.2d 524, 530 (S.D.N.Y.1999) (collecting cases).

pole at a co-worker (1990), *see* Findlay Dep. at 105–08; and (7) denial of promotion to anode crew chief (1990–91), *see* Findlay Dep. at 74–78. The allegations relating to incidents occurring in 1994 and thereafter include: (1) two red cones resembling Ku Klux Klan hats placed on hood of Plaintiff's car (1994), *see* Findlay Dep. at 24–25; Findlay Aff. at Ex. B; (2) denial of a transfer to Nigeria (1994), *see* Findlay Dep. at 67–74; (3) not being considered for DCO training (1997), *see* Findlay Dep. at 39–41; 116–18(4) not receiving QS 9000 training (1997), *see* Findlay Dep. at 48–51; (5) denial of a promotion to anode crew chief (1996), *see* Findlay Dep. at 77–78; (6) denial of a promotion to cast house crew chief (1996–97), *see* Findlay Dep. at 80–82; and (7) a number of instances where Plaintiff was "yelled at" for work-related deficiencies, but no reprimand, transfer, reassignment, loss of pay or time or other adverse employment action resulted (1997), *see* Findlay Dep. at 84 (failing to straighten his bundles); 85–86 (placed on a work-over list for failing to clean up self-created mess); 96–101 (failing to inform supervisor of his delay in returning to work area after taking a hearing test).[6] Plaintiff contends that these racially discriminatory incidents were the result of actions taken by Plaintiff's co-workers and supervisors and that Plaintiff's supervisors and Reynolds' management failed to take any corrective or remedial action with respect to Plaintiff's complaints. *See* Amended Compl. at ¶¶ 27–30.

Discovery with respect to Plaintiff's claims against Defendant Reynolds is complete. *See* Carmen Aff. at Ex. B (Letter and Attorney's Certification of Bonnie Strunk, Esq. dated July 29, 1999). Defendant Reynolds now moves, pursuant to FED. R. CIV. P. 56, to dismiss all claims alleged against Reynolds in the Complaint.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under FED. R. CIV. P. 56(c), if there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). The moving party bears the initial burden of "informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *See Bryant v. Maf-*

---

**6.** These incidents are reflected, in some part, in the 7.1(a)(3) Statements of Undisputed Facts submitted by the parties in connection with the instant motion. *See* Def. Reynolds Statement of Undisputed Facts, at ¶¶ 9, 16; Pl. Statement of Undisputed Facts, at ¶¶ 8–16.

*fucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990). Indeed, the non-moving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

While the Court is mindful that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated," *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), it is clear that "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)." *Id.* (citations omitted); *see also Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997).

## B. Plaintiff's Disparate Treatment Claim

### 1. Administrative Exhaustion Requirement

Defendant Reynolds argues that the cause of action sounding in disparate treatment is not included in, nor reasonably related to the charges alleged in Plaintiff's 1995 and 1996 EEOC Complaints and, thus, is barred because of Plaintiff's failure to exhaust his administrative remedies.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts,* 990 F.2d at 1401 (citing *Stewart v. United States Immigration and Naturalization Serv.,* 762 F.2d 193, 198 (2d Cir.1985)); *see also Shah v. New York State Dep't of Civil Serv.,* 168 F.3d 610, 613–14 (2d Cir.1999); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir.1998). Courts "generally have no jurisdiction to hear claims not alleged in the employee's EEOC charge," *Brown,* 163 F.3d at 712, as the purpose of the exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action," *Stewart,* 762 F.2d at 198; *see also Shah,* 168 F.3d at 614; *Butts v. City of New York Dep't of Housing Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993) ("[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.") (internal quotations and citations omitted).

A complaint "must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint." *See* 29 C.F.R. § 1614.106(c). In this case, Plaintiff filed his EEOC Complaints on August 22, 1995 and February 16, 1996, alleging that he was "subjected to racial harassment consisting of a racially hostile work environment." 1995 EEOC Complaint; 1996 EEOC Complaint. As described by Plaintiff, the incidents included "derogatory racial epithets and racial humor and stereotyping by [Plaintiff's] co-workers and management." *Id.* Notably, this allega-

tion, and the documented incidents, relate solely to Plaintiff's hostile work environment and retaliation claims.[7] A careful reading of the unambiguous language contained in the 1995 and 1996 EEOC Complaints evinces allegations of a race-based hostile work environment and retaliation.[8] Significantly, Plaintiff's EEOC Complaints failed to adequately place Reynolds on notice of potential allegations of disparate treatment based on Plaintiff being denied equal job opportunities because of his race or color. Because Plaintiff's disparate treatment charge was never presented to the EEOC, this Court is without jurisdiction to consider that claim.

Plaintiff argues that he should nevertheless be permitted to raise his disparate treatment claim because it is reasonably related to allegations and specific incidents of discrimination contained in the 1995 and 1996 EEOC Complaints. *See* Pl. Mem. of Law at 3–4. Thus, Plaintiff contends that his disparate treatment claim falls within the *Butts* exceptions to the administrative exhaustion requirement. In this regard, the Second Circuit has "recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Butts*, 990 F.2d at 1402.

### (a) Whether the Conduct Falls Within the Scope of the EEOC Investigation

The first "reasonably related" claim is "essentially an allowance of loose pleading" and allows "claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"

*Id.* (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). "'Reasonably related' means that despite the claimant's having failed to specify the precise charge, the EEOC likely would have investigated the conduct complained of anyway." *Pemrick v. Stracher*, 67 F.Supp.2d 149, 170 (E.D.N.Y. 1999). It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key. *See McNight v. Dormitory Auth. of the State of New York*, 995 F.Supp. 70, 77 (N.D.N.Y.1998); *Dargento v. Bally's Holiday Fitness Ctrs.*, 990 F.Supp. 186, 193 (W.D.N.Y.1997). "However, the loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably." *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y.1998); *see also Butts*, 990 F.2d at 1403 ("Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.").

In the present matter, the 1995 and 1996 EEOC Complaints unambiguously limit Plaintiff's claims to a racially hostile work environment and retaliation. Notably absent from both administrative complaints are allegations that Plaintiff was denied the same job opportunities provided to similarly situated white employees by limiting Plaintiff's job classifications, job assignments, wages or other work-related benefits. The incidents underlying Plaintiff's disparate treatment claim—Reynolds' alleged failure to transfer, promote and

---

7. On both his 1995 and 1996 EEOC Complaints, Plaintiff checked the box for discrimination on the basis of race and color and retaliation.

8. Plaintiff's 1995 and 1996 EEOC Complaints generally allege that, "As a result of my com-

plaints, I have been ostracized and am isolated at work." Carmen Aff. at Exs. C and D. Plaintiff, however, fails to document any specific incidents underlying his retaliation claim. *See id.*

adequately train him—are absent from both EEOC complaints. Rather, the EEOC complaints solely allege incidents underlying Plaintiff's hostile work environment claim, which are notably distinct from incidents underlying Plaintiff's disparate treatment claim. Accordingly, the investigation into Plaintiff's charges would not fall within the scope of, and could not reasonably be expected to grow into, an investigation of a claim of disparate treatment. *See, e.g., Osier v. Broome County,* 47 F.Supp.2d 311, 319–21 (N.D.N.Y.1999) ("Plaintiff's conclusory allegations of 'sexual harassment' are insufficient to give the defendants notice of the many incidents of a hostile work environment that she is now asserting in this lawsuit."); *Fitzgerald v. Henderson,* 36 F.Supp.2d 490, 500 (N.D.N.Y.1998) (claim of retaliation did not reasonably grow out of a claims of sexual discrimination and harassment) (citing *Szarka v. Reynolds Metals Co.,* 17 F.Supp.2d 115, 124 (N.D.N.Y.1998) (claim of hostile work environment did not reasonably grow out of a claim of sex and age discrimination); *Cooper,* 994 F.Supp. at 433 (charge of racial discrimination does not support claim for hostile work environment or harassment); *Tavarez v. Chemical Bank,* 1998 WL 337071, at *3 (S.D.N.Y. June 25, 1998) ("A charge of disability discrimination cannot reasonably be expected to grow out of a charge of discrimination based on national origin."); *DeJesus v. Allstate Ins. Co.,* 1998 WL 241726, at *4 (S.D.N.Y. May 11, 1998) (a claim of redlining is not reasonably related to a charge of racial discrimination); *Harris v. New York City Dep't of Homeless Servs. Eligibility Investigation Unit,* 1998 WL 205334, at *9 (S.D.N.Y. April 28, 1998) (a charge of gender discrimination and a retaliation claim for filing sexual harassment charges fails to satisfy the reasonably related test), *aff'd,* 181 F.3d 82, 1999 WL 314158 (2d Cir.1999); *Carrasco v. New York City Off-Track Betting Corp.,* 858 F.Supp. 28, 33 (S.D.N.Y.1994) (retaliation claim not reasonably related to charge of sexual discrimination), *aff'd,* 50 F.3d 3 (2d

Cir.1995)). Thus, this exception does not apply.

### (b) Retaliation

"The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Butts,* 990 F.2d at 1402. In these cases, the exhaustion requirement is relaxed "based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." *Id.* Thus, this exception addresses those situations where the plaintiff has filed an EEOC charge and the EEOC has the "opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged." *Id.*

Here, Reynolds claims that Plaintiff failed to exhaust his administrative remedies with respect to his disparate treatment claim only. This second exception, however, applies to claims of *retaliation* that arise after an employee files his or her administrative charge. *See, e.g., Francis v. Chemical Banking Corp.,* 62 F.Supp.2d 948, 960 (E.D.N.Y.1999); *Pustilnik v. Hynes,* 1998 WL 813411, at *5 (E.D.N.Y. July 21, 1998) ("The retaliation exception applies only to claims of retaliation that are asserted in a federal complaint, arising from the filing of an EEOC complaint. . . ."); *Jones v. The Long Island R.R. Co.,* 1998 WL 221365, at *3 (E.D.N.Y. May 1, 1998) ("[A]s there are no allegations of retaliation, the second [*Butts*] exception is clearly not applicable."), *aff'd,* 173 F.3d 844, 1999 WL 245862 (2d Cir.1999). Thus, this exception is inapplicable to Plaintiff's disparate treatment claim.

### (c) Allegations of Further Incidents of Discrimination

"The third type of 'reasonably related' claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts,* 990 F.2d at 1402–03. Because Plaintiff's 1995 and 1996

EEOC Complaints document specific incidents relating to a claim of a racially hostile work environment (e.g., racially derogatory comments and jokes), it cannot therefore be said that Plaintiff's claim of disparate treatment is a further incident of discrimination carried out in the same manner alleged in the EEOC complaints. *See id.* Indeed, Plaintiff's disparate treatment claim—which is based on being denied a transfer to work outside of the United States and not being promoted or offered training classes at various times—relies on very different incidents of discrimination than those underlying Plaintiff's hostile work environment and retaliation claims.[9] Thus, this exception is also inapplicable. Accordingly, Plaintiff's cause of action based upon disparate treatment is barred due to his failure to exhaust administrative remedies.

## 2. The Merits of Plaintiff's Disparate Treatment Claim

 Even on the merits, Plaintiff's disparate treatment claim must be dismissed because it fails to establish a prima facie case of disparate treatment. Plaintiff's disparate treatment claim alleges that Reynolds failed to provide Plaintiff the same employment opportunities, e.g., promotion and training opportunities, afforded to similarly situated white employees. The incidents underlying Plaintiff's disparate treatment claim relate, *inter alia,* to: (1) being denied a transfer to Nigeria; (2) twice being denied promotion to anode crew chief (1991 and 1996); (3) being denied promotion to cast house crew chief (1996); and (4) not being considered or provided DCO and QS 9000 training.

A review of these incidents reveals that Reynolds' actions were not racially motivated. First, Plaintiff acknowledges that he was denied the transfer to Nigeria because selection for that assignment was based on seniority and Plaintiff was significantly less senior (by approximately 25 years) than Mr. La Mountain, the employee ultimately selected for the position in Nigeria. *See* Findlay Dep. at 67–74. Second, Plaintiff acknowledges that the crew chief position that he applied for in 1991 was never filled, *see id.* at 76–78, and the crew chief position he applied for in 1996 was given to an employee who was a member of the department offering the crew chief position and, therefore, had a preference over plaintiff, who was not a member of that department, *see id.* at 77–78. Third, Plaintiff was denied promotion to cast house crew chief in 1996 because he was out on suspension at that time and, thus, was not eligible for the position. *See id.* at 80–82. Fourth, Plaintiff did not receive the QS 9000 training because he was on suspension for threatening a co-worker at the time the training classes were offered. *See id.* at 48–51. Fifth, Plaintiff acknowledges that the DCO training was determined based on the employee's seniority and the employees selected were all more senior than Plaintiff. *See id.* at 40–41. Thus, Plaintiff is unable to demonstrate that a genuine issue of material fact exists sufficient for a reasonable trier of fact to conclude that Reynolds' employment actions occurred under circumstances giving rise to an inference of discrimination based on Plaintiff's race or color.[10] *See Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998). Accordingly, Plaintiff's disparate treatment claim is dismissed.

## C. Applicability of the Continuing Violation Exception to Plaintiff's Title VII and Section 1981 Claims

 Pursuant to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred."

---

9. As previously noted, Plaintiff's retaliation claim is based on the general allegation that he was ostracized and isolated as a result of filing complaints with the EEOC. *See* Carmen Aff. at Exs. C and D.

10. For similar reasons, these incidents are insufficient, standing alone, to sustain a claim under Section 1981.

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998). "This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Id.* (internal citations omitted). In contrast to his Title VII claims, the statute of limitations for a claim brought under Section 1981 is three years. *See Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 739 n. 5 (2d Cir.1998); *Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir.), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990); *Jenkins v. Arcade Bldg. Maintenance*, 44 F.Supp.2d 524, 529 (S.D.N.Y.1999) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994)). Plaintiff's section 1981 claim accrues, and the limitations period begins to run, when he "has notice of the act that is claimed to have caused the injury." *Jenkins*, 44 F.Supp.2d at 530; *see also Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994), *cert. denied*, 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995); *Hudson v. Delphi Energy and Engine Management Sys., Inc.*, 10 F.Supp.2d 256, 258 (W.D.N.Y.1998) ("The statute of limitations [for a section 1981 claim] begins to run at 'that point in time when the plaintiff knows or has reason to know of the injury which is the basis of [his] action.'") (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981)).

Plaintiff's two remaining race-based claims under Title VII allege that: (1) he was subjected to a racially hostile work environment; and (2) he was retaliated against after filing a complaints with the EEOC. Plaintiff also raises a claim pursuant to Section 1981 based on the same incidents of discrimination underlying his Title VII claims. In addition to disputing these claims, Reynolds contends that the majority of the incidents underlying the Title VII and Section 1981 claims are time-barred. Specifically, Reynolds argues that, under Title VII, any conduct occurring prior to October 26, 1994 (300 days

prior to the filing of the August 22, 1995 EEOC Complaint) is time-barred pursuant to 42 U.S.C. § 2000e–5(e). Reynolds similarly argues that any conduct occurring prior to November 26, 1993 (three years before Plaintiff filed his Federal Complaint) may not be considered in connection with Plaintiff's claim pursuant to 42 U.S.C. § 1981. In response, Plaintiff seeks to invoke the continuing violations exception to capture those alleged incidents of discrimination falling outside the limitations period applicable to his Title VII and Section 1981 claims. Accordingly, to determine which of Plaintiff's allegations are timely, the Court must first determine whether "it is confined its consideration to those incidents alleged to have occurred within the limitations period, or instead whether the limitations period should have been extended due to the existence of a 'continuing violation.'" *Quinn*, 159 F.3d at 765.

"The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations.'" *Quinn*, 159 F.3d at 765 (quoting *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998)); *see also Fitzgerald*, 36 F.Supp.2d at 501. "Stated differently, when evidence of an ongoing discriminatory policy or practice is present, a court may consider all of an employer's actions allegedly taken pursuant to such policy, even if some are time-barred." *Fitzgerald*, 36 F.Supp.2d at 501 (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996)).

The continuing violations exception, however, has "delineated limits." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 178, 145 L.Ed.2d 150 (1999). Specifically, the exception "applies to cases involving specific discriminatory policies or mechanisms such as discrimina-

tory seniority lists, or discriminatory employment tests." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) (citing *Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 646 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274–75 (2d Cir. 1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982)), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Nonetheless, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn*, 159 F.3d at 765 (quoting *Lambert*, 10 F.3d at 53); *see also Hardin*, 167 F.3d at 344 ("Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.'") (quoting *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir.1996)); *Cornwell*, 23 F.3d at 704 ("While discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation, a continuing violation may be found where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.") (internal citation omitted); *Brown v. Middaugh*, 41 F.Supp.2d 172, 182 (N.D.N.Y.1999) ("Under *Berry [v. Board of Supervisors of L.S.U.*, 715 F.2d 971 (5th Cir.1983)]*'s reasoning, the continuing violations doctrine applies if: (1) the allegedly discriminatory acts within and without the limitation period are sufficiently similar and frequent enough to constitute a single discriminatory practice chargeable to the employer; and (2) the circumstances are such that a plaintiff was not bound to have sued earli-

er."), *reconsideration denied*, 1999 WL 242662, at *1–*3 (N.D.N.Y. Apr.21, 1999). The Court is mindful, however, that "the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995); *see also Petrosky v. New York State Dep't of Motor Vehicles*, 72 F.Supp.2d 39, 48 (N.D.N.Y. 1999) (collecting cases); *Franklin v. Consolidated Edison Co. of New York, Inc.*, 1999 WL 796170, at *5 (S.D.N.Y. Sept.30, 1999) ("The continuing violation doctrine is a very narrow exception to the statute of limitations bar and its application is generally disfavored."); *Sharkey v. Lasmo*, 992 F.Supp. 321, 333–34 (S.D.N.Y.1998) ("[T]he Court of Appeals has recently suggested that a finding of 'compelling circumstances' may be limited to situations in which the effect of the alleged discrimination will likely be felt only at a later date.") (citing *Pollis v. New School for Soc. Research*, 132 F.3d 115, 118–19 (2d Cir.1997)); *Wang v. N.Y.C. Dep't of Fin.*, 1999 WL 529550, at *10 (E.D.N.Y. July 21, 1999); *Carrasco*, 858 F.Supp. at 31 (" 'The Second Circuit has recently reasserted the law of this Circuit that, unless the plaintiff alleges discrimination by virtue of a specific official policy or mechanism, claims of continuing violation will not lie.'") (quoting *Page v. New York City Off–Track Betting, Inc.*, 1993 WL 426865, at *2 (S.D.N.Y. Oct.22, 1993)); *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989); *LaBeach v. Nestle Co., Inc.*, 658 F.Supp. 676, 687 (S.D.N.Y.1987).

Plaintiff's claim, in its entirety, alleges specific and discrete incidents of a racially hostile work environment and a general claim of retaliation. Both charges filed with the EEOC fail to allege, with the requisite degree of specificity, the existence of a formal and ongoing discriminatory policy or mechanism at Reynolds sufficient to trigger the continuing violations exception. Indeed, Plaintiff's 1995 EEOC Complaint fails to allege any continuing

violation and it was only in his 1996 EEOC Complaint that Plaintiff inserted the conclusory sentence, "This is a continuing violation." [11] Moreover, it is clear from the record that the alleged incidents of racially derogatory comments and epithets cited by Plaintiff in the 1995 and 1996 EEOC Complaints and detailed in his deposition began as early as 1990 and by 1993—at least two years before Plaintiff filed his first complaint with the EEOC—Plaintiff was well aware of the alleged discriminatory actions that are documented in his EEOC and Federal Complaints. Thus, even by the most conservative estimates and construing the allegations in the complaint liberally and drawing all reasonable inferences in favor of the non-moving party, Plaintiff was on notice of the events underlying both his Title VII and Section 1981 claims by 1993. *See, e.g., Hardin,* 167 F.3d at 344–45; *Nweke v. The Prudential Ins. Co. of Am.,* 25 F.Supp.2d 203, 216 n. 1 (S.D.N.Y.1998); *Frank v. New York State Elec. & Gas,* 871 F.Supp. 167, 173 (W.D.N.Y.1994). Because Plaintiff's allegations of a racially hostile work environment and retaliation cannot be read to state a continuing violation claim, Plaintiff may not reach back and rely on alleged incidents of discrimination occurring prior to October 26, 1994 (for his hostile work environment and retaliation claims under Title VII) and November 26, 1993 (for his Section 1981 claim). *See Quinn,* 159 F.3d at 765; *Lambert,* 10 F.3d at 53.

## D. Plaintiff's Claim of a Racially Hostile Work Environment

■■■■■ Plaintiff's hostile work environment claim is based, in large part, on racially derogatory comments and jokes made by his co-workers. *See* Pl. Mem. of Law at 5. To prevail on his hostile work

environment claim, Plaintiff must show: "(1) that the 'workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [plaintiff's] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 436 (2d Cir.1999) (brackets in original) (quoting *Schwapp,* 118 F.3d at 110); *Torres v. Pisano,* 116 F.3d 625, 630–31 (2d Cir.), *cert. denied,* 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); *see also Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To be actionable, the conduct at issue must objectively *and* subjectively create a hostile or abusive work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998); *Richardson,* 180 F.3d at 436 (citing *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367); *Schwapp,* 118 F.3d at 110.

■■■■ In determining whether an environment is sufficiently hostile or abusive to support a Title VII claim, courts examine the totality of the plaintiff's circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance;' (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Richardson,* 180 F.3d at 437 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367); *see also Faragher,* 118 S.Ct. at 2283; *Leopold v. Baccarat, Inc.,* 174 F.3d 261, 269 (2d Cir.1999); *Quinn,* 159 F.3d at 767–68. Consistent with the approach adopted

---

11. In his Memorandum of Law, Plaintiff offers only conclusory statements and citations to numerous Second Circuit decisions (absent factual support) in seeking application of the continuing violations exception. *See* Pl. Mem. of Law at 2–3. Specifically, Plaintiff fails to address the similarity and frequency of the discriminatory incidents attributed to

Reynolds and leaves it to the Court to scour the affidavit and deposition materials to summarize the alleged incidents of discrimination underlying Plaintiff's claims. *See, e.g., Brown v. Middaugh,* 41 F.Supp.2d 172, 183 n. 7 (N.D.N.Y.1999); *Jenkins,* 44 F.Supp.2d at 531.

by the Second Circuit, this non-exclusive list of factors "must be considered 'cumulatively,' so that [the Court] may 'obtain a realistic view of [Plaintiff's] work environment.'" *Richardson*, 180 F.3d at 437 (quoting *Schwapp*, 118 F.3d at 111).

In the context of allegations supporting a race-based hostile work environment, the Second Circuit has stated:

> For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment.

*Schwapp*, 118 F.3d at 110 (internal citations and quotations omitted).

In assessing a plaintiff's allegations under these standards, courts have held that "[i]solated incidents or episodic conduct will not support a hostile work environment claim." *Richardson*, 180 F.3d at 437 (citing *Kotcher v. Rosa and Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir.1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.")); *see also Faragher*, 118 S.Ct. at 2283; *Schwapp*, 118 F.3d at 110–11; *Quinn*, 159 F.3d at 768. Rather, "[t]he harassment at issue must be 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Kotcher*, 957 F.2d at 62 (quoting *Meritor Sav. Bank*, 477 U.S. at 67, 106 S.Ct. 2399). The Court is mindful, however, that, "[a]lthough isolated, minor episodes of harassment do not merit relief under Title VII, even a single episode of harassment, if severe enough, can establish a hostile work environment." *Richardson*, 180 F.3d at 437 (internal quotation and citation omitted).

The alleged incidents occurring within the 300 day limitations period (on or after October 26, 1994) include, *inter alia*, two red cones placed on the hood of Plaintiff's car allegedly resembling Ku Klux Klan hats and being yelled at for work-related deficiencies. These incidents, standing alone, lack the requisite severity and pervasiveness to constitute an objectively abusive or racially hostile work environment. *See, e.g., Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir.1999) ("In order to recover on a claim of a racially hostile work environment in violation of Title VII, the plaintiff must establish that his workplace was permeated with instances of racially discriminatory conduct such as discriminatory intimidation, ridicule, and insult.") (quotation omitted); *Torres*, 116 F.3d at 630. Moreover, Plaintiff has failed to allege that the racially derogatory comments and jokes were either physically threatening or "unreasonably interfered with his job performance." *Brown*, 41 F.Supp.2d at 188. In short, Plaintiff's Memorandum of Law contains a host of unsupported and conclusory statements that is long on the general legal standards governing hostile work environment claims and short on the application of those standards to the facts and circumstances present in the instant case. Accordingly, Reynolds' motion for summary judgment with respect to Plaintiff's hostile work environment claim is granted.

### E. Plaintiff's Retaliation Claim

Defendant moves to dismiss Plaintiff's retaliation claim on the basis that Reynolds' employment decisions were not racially motivated or related to the two complaints Plaintiff filed with the EEOC. *See* Def. Mem. of Law at 19. Plaintiff's Memorandum of Law fails to respond to this portion of Reynolds' motion, thereby indicating that Plaintiff "consent[s] to the granting of summary judgment with respect to this portion of [Reynolds'] motion or ha[s] otherwise abandoned this claim." *Niles v. Nelson*, 72 F.Supp.2d 13, 22

(N.D.N.Y.1999) (citing *Frink America, Inc. v. Champion Road Mach. Ltd.*, 48 F.Supp.2d 198, 209 (N.D.N.Y.1999) (collecting cases)). Thus, on that ground alone, Plaintiff's retaliation claim should be dismissed.

■ An examination of the merits of Plaintiff's retaliation claim yields a similar result. To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that: (1) he engaged in a protected activity, (2) suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse decision. *See Quinn*, 159 F.3d at 768; *Franklin*, 1999 WL 796170, at *14. Once the plaintiff makes out his prima facie case of retaliation, "the defendant has the burden of articulating a legitimate, non-retaliatory reason for the complained of action[s]". *Quinn*, 159 F.3d at 768–69 (citations omitted). If the defendant meets its burden, "plaintiff must adduce evidence 'sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext' for retaliation." *Id.* (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1309 (2d Cir.1995) (brackets in original)); *see also Petrosky*, 72 F.Supp.2d at 62; *Franklin*, 1999 WL 796170, at *14.

Plaintiff's retaliation claim is based on the following incidents occurring *subsequent* to the filing of the 1995 and 1996 EEOC Complaints: (1) denial of promotion to anode and cast house crew chief in 1996; and (2) not being considered for DCO and QS 9000 training.[12]

■ Here, the Court assumes, without deciding, that Plaintiff established a prima facie case of unlawful retaliation under Title VII. *See, e.g., Bickerstaff v. Vassar College*, 196 F.3d 435, 447 (2d Cir.1999); *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 320 (5th Cir.1999); *Bond v. Sterling, Inc.*, 77 F.Supp.2d 300, 303 (N.D.N.Y.

1999) (citing cases). Reynolds, in turn, has met its burden by proffering several legitimate, nondiscriminatory reasons for its employment decisions occurring after Plaintiff filed his 1995 and 1996 EEOC Complaints. As previously noted (and not disputed by Plaintiff), Reynolds' decision not to promote Plaintiff to anode crew chief in 1996 was based on a preference awarded to another employee who, unlike Plaintiff, was a member of the department offering the crew chief position. Plaintiff was denied the cast house crew chief position in 1996 because he was out on suspension and, thus, ineligible for that position. Lastly, Plaintiff was ineligible for the QS 9000 training because he was on suspension at the time the classes were offered and was denied DCO training based on his seniority. *See infra*, at 34–35. Reynolds having satisfied its burden on summary judgment, the burden now shifts to Plaintiff to present "sufficient evidence of pretext to avoid summary judgment." *Franklin*, 1999 WL 796170, at *14; *see also Petrosky*, 72 F.Supp.2d at 62.

Because this issue is not addressed in Plaintiff's Memorandum of Law, the Court is left only to speculate as to whether Reynolds' employment decisions are a mere pretext for retaliation. However, given Plaintiff's acknowledgment of the facts and circumstances underlying the employment actions described above, and a failure to present any evidence tending to show that Reynolds' reasons were a pretext for retaliation, Plaintiff fails to demonstrate that a genuine issue of material facts exists sufficient for a reasonable trier of fact to conclude that Reynolds' employment actions were retaliatory in nature. Accordingly, Plaintiff's retaliation claim must be dismissed.

### F. Plaintiff's Section 1981 Claim

Plaintiff also alleges a claim under Section 1981 based on the same incidents of

---

12. Plaintiff's EEOC and Federal Complaints (as well as his Memorandum of Law) fail to document *any* specific incidents in support of his general claim of being ostracized and isolated at work. Accordingly, the Court focuses on those incidents documented in Plaintiff's deposition and affidavit occurring after Plaintiff filed his administrative complaints in 1995 and 1996.

discrimination and retaliation alleged in his 1995 and 1996 EEOC Complaints and in his Federal Complaint. As previously noted, only those incidents occurring on or after November 26, 1993 (within the 3 year period preceding the filing of the Federal Complaint) may be relied on by Plaintiff in establishing his Section 1981 claim.

Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (West 1994).

To state a claim under section 1981, a plaintiff must allege facts to establish: "(1) membership in a racial minority group; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *Brown,* 41 F.Supp.2d at 193 (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam)); *see also Jenkins v. Arcade Bldg. Maintenance,* 1999 WL 1051105, at * 4 (S.D.N.Y. Nov.19, 1999).

"In its general application, section 1981 has been construed as a prohibition against racial discrimination." *Brown,* 41 F.Supp.2d at 193 (citing *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 608–10, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987)); *see also Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988). "Essential to an action under Section 1981 are allegations that the defendant['s] acts were purposefully discriminatory, and racially motivated." *Albert,* 851 F.2d at 571 (internal citations omitted); *see also Jenkins,* 44 F.Supp.2d at 528 (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375,

391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)); *Brown,* 41 F.Supp.2d at 193 ("Any discrimination must have been intentional and purposeful and the plaintiff's race must have been the motivating factor behind the defendant's discriminatory acts."). Conclusory or naked assertions by a plaintiff that race was a motivating factor is insufficient to sustain claim under section 1981. *See Mian,* 7 F.3d at 1088; *Jenkins,* 44 F.Supp.2d at 528. Rather, "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Jenkins,* 44 F.Supp.2d at 528; *see also Brown,* 41 F.Supp.2d at 193 (citing *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993), *aff'd in part and rev'd in part,* 35 F.3d 709 (2d Cir.1994)).

The Court has previously held that Plaintiff failed to establish a genuine issue of material fact sufficient to preclude summary judgment on his Title VII claims. Because Plaintiff's section 1981 claim relies on the same incidents of discrimination as those underlying his Title VII claims, it must also be dismissed. Indeed, in his deposition testimony Plaintiff acknowledges numerous non-racially motivated reasons for Reynolds' employment actions. Critically, however, Plaintiff fails to demonstrate a causal link between Reynolds' actions and Plaintiff's race sufficient to infer that Reynolds' actions were the product of intentional and purposeful discrimination based on Plaintiff's race or color. Accordingly, Plaintiff's section 1981 claim must also be dismissed.

### III. CONCLUSION:

For all of the foregoing reasons, Defendant Reynolds' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**